# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HALL-MAGNER GROUP, | CASE NO. 11-CV-312 JLS (POR) |
| Plaintiff, | **ORDER: (1) GRANTING DEFENDANTS' MOTION TO DISMISS; AND (2) DENYING DEFENDANTS' MOTION FOR SANCTIONS** |
| vs. | |
| CONVOCATION FLOWERS, INC., and COMMENCEMENT FLOWERS, INC. | (ECF Nos. 22, 24) |
| Defendants. | |

Presently before the Court is Defendants Convocation Flowers, Inc. and Commencement Flowers, Inc.'s motion to dismiss Plaintiff's First Amended Complaint ("FAC") for lack of personal jurisdiction (MTD, ECF No. 22), as well as Plaintiff's opposition (Opp'n to MTD, ECF No. 26) and Defendants' reply (Reply ISO MTD, ECF No. 27). Also before the Court is Defendants' motion for sanctions against Plaintiff and Plaintiff's counsel (Mot. for Sanctions, ECF No. 24), which Plaintiff has opposed (Opp'n to Sanctions, ECF No. 25), and Defendants have supported in reply (Reply ISO Sanctions, ECF No. 28). Having fully considered the parties'

arguments and the law, the Court **GRANTS** Defendants' motion to dismiss for lack of personal jurisdiction, and **DENIES** Defendants' motion for sanctions.

## BACKGROUND[1]

Plaintiff Hall-Manger Group, which does business as "Commencement Flowers," provides flowers for university graduations throughout the United States, including in California. (FAC ¶ 1-2, ECF No. 16). On November 9, 2010, Plaintiff registered the mark "Commencement Flowers" on the Supplemental Registry of the U.S. Patent and Trademark Office, with a first use in commerce date in 1988. (*Id.* at ¶ 16).

Plaintiff brought this action on February 15, 2011, asserting six causes of action against Darryl Firsten—three for trademark infringement under the Lanham Act, and three related causes of action under California Law—and seeking an injunction as well as damages. (Compl., ECF No. 1.) The Court granted Defendants' motion to dismiss for lack of personal jurisdiction on October 24, 2011, giving Plaintiff leave to file an amended complaint that alleged facts to support the existence of personal jurisdiction. (Oct. 24, 2011 Order 10, ECF No. 15.)

On November 3, 2011, Plaintiff filed the operative FAC. Instead of against Darryl Firsten, the FAC asserts the same six claims against Defendants Convocation Flowers, Inc. ("Convocation Flowers"), a Canadian corporation, and Commencement Flowers, Inc., ("Commencement Flowers"), a New Jersey corporation. (FAC ¶ 6.) Plaintiff alleges Darryl Firsten owns both corporations, and that Convocation Flowers is the alter ego of Commencement Flowers. (*Id.* at ¶ 22.) Defendants operate two identical websites, convocationflowers.ca and commencementflowers.com, which sell flowers for graduations. (*Id.*) Using these websites, individuals—such as the parents of students who attend specific participating universities in the Midwestern or Eastern United States, or Canada—are able to log onto one of Defendants' websites through a special link at the school's event page to purchase flowers for pickup at that university's commencement. (*See* Opp'n to MTD, Ex. 12 at 1-2; Reply 5.) Although anyone may access Defendants' websites directly, the sites do not allow a general user who has not accessed them

---

[1] The Court has already recounted much of the factual history relevant to the instant motion in its previous Order granting Defendant's Motion to Dismiss Plaintiff's Complaint (Oct. 24, 2011 Order 1-2, ECF No. 6), which is incorporated by reference here.

1  through an affiliated school's link to enter credit card information or finalize a purchase; instead, a
2  page indicates that Defendants "do not sell flowers to the general public at this time." (Opp'n to
3  MTD 1.) On these websites, as well as in printed advertising, e-mail communications, marketing
4  literature passed out at commencements, and in direct communication with schools and
5  universities that comprise Plaintiff's market, Defendants use Plaintiff's registered mark,
6  "Commencement Flowers," thereby infringing upon Plaintiff's mark. (FAC ¶ 3-4.)

7  Plaintiff discovered Defendants' alleged infringement "[o]n or before November 22, 2010,
8  as a result of a search on the internet" which revealed that Defendants "were operating a retail
9  website service business in which they sold Flower Products throughout the United States under
10 the mark 'Commencement Flowers' and under the trade name 'Commencement Flowers.'"
11 (FAC ¶ 25.) Specifically, Plaintiff alleges Defendants use the above-referenced websites to solicit
12 business to sell flowers in California. (*Id.* at ¶ 26.) On November 24, 2010, Plaintiff requested
13 Defendants cease and desist using the infringing trade name and mark, but Defendants have
14 refused to comply. (*Id.* at ¶ 27.)

15 Although not alleged in the FAC, in opposing Defendants' instant motion Plaintiff asserts,
16 through the Declaration of Robert Hall, that on May 15, 2008, an incident occurred in Fullerton,
17 California on the campus of the University of California, Irvine, where Concordia University was
18 holding its graduation ceremony. (Hall Decl., Ex. 11 to Opp'n to MTD.) In this declaration, Mr.
19 Hall attests that on or about May 15, 2008, he was "advised via telephone by [his] team supervisor
20 of a problem at the campus of University of California in Irvine, California [UCI]. . . . [The] team
21 supervisor, Matt Gilbert, observed that defendant Darryl Firsten's team was present on the
22 campus. They also called themselves Commencement Flowers and they were trying to sell
23 flowers at [Concordia University's] graduation." (*Id.*) Mr. Hall further states he instructed Matt
24 Gilbert to contact the campus police, which stopped Defendants' team while they were "in the
25 process of setting up a kiosk on the campus," and "escorted the defendant's crew off the campus
26 because their products and services were in breach of an existing contract between Hall-Manger
27 Group and UCI for the exclusive right to provide graduation flowers." (*Id.*) Defendants deny
28 these allegations entirely, explaining that they do "service" a Concordia University, but that it is

located in Quebec, Canada, not California. (Reply ISO MTD 10.) Defendants instead assert, through the Declaration of Darryl Firsten, that neither Defendant has ever "sold flowers in connection with events at any schools in California." (MTD 5; Firsten Decl. ¶ 14, Ex. A to MTD.)

**1. Motion to Dismiss under Rule 12(b)(2)**

*A. Legal Standard*

Federal Rule of Civil Procedure 12(b)(2) allows district courts to dismiss an action for lack of personal jurisdiction. "Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate." *Dole Food Co. Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). "The court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citing *Data Disc, Inc. v. Sys. Tech. Ass'n, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). "When a district court acts on the defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand a motion to dismiss." *Id.* (citing *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)).

In establishing personal jurisdiction, a plaintiff's uncontroverted allegations are taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). However, this same assumption does not apply to allegations that are contradicted by affidavit. *Data Disc*, 557 F.2d at 1284. If the parties submit conflicting affidavits, the plaintiff's version trumps. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("We may not assume the truth of allegations in a pleading which are contradicted by affidavit, but we resolve factual disputes in the plaintiff's favor.") (internal quotation marks and citations omitted); *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) ("Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'") (citing *Unocal Corp.*, 248 F.3d at 922).

//

Where no federal statute authorizes personal jurisdiction, district courts apply the law of the state in which they sit. Fed. R. Civ. P. 4(k)(1)(A); *Mavrix*, 647 F.3d at 1223. California's long-arm statute permits the exercise of personal jurisdiction so long as it comports with federal due process. *See* Cal. Civ. Proc. Code § 410.10; *Fred Martin Motor*, 374 F.3d at 800–01. Accordingly, the Court's jurisdictional analysis under California law is coextensive with a federal due process analysis. "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Fred Martin Motor*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)).

Under the minimum contacts test, jurisdiction can be either "specific" or "general." *Doe*, 248 F.3d at 923. "Specific jurisdiction exists 'where the cause of action arises out of or has substantial connection to the defendant's contact with the forum.'" *ChemRisk v. Chappel*, 2011 WL 1807436, at *3 (N.D. Cal. May 12, 2011) (quoting *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002)). "[G]eneral jurisdiction depends on the defendant's 'substantial, continuous and systematic' contacts with the forum, 'even if the suit concerns matters not arising out of his contacts with the forum.'" *Id.*

**B. Analysis**

*(i) General Jurisdiction*

"For general jurisdiction to exist over a nonresident defendant . . . the defendant must engage in continuous and systematic general business contacts . . . that approximate physical presence in the forum state." *Fred Martin Motor*, 374 F.3d at 801 (internal quotation marks and citations omitted). In determining whether a defendant's contacts are sufficiently continuous and systematic to confer general jurisdiction, courts consider such factors as the longevity, continuity, volume, and economic impact of the defendant's contacts in the forum state; other indications of the defendant's physical presence in the forum state; and the extent to which defendant's contacts are integrated into the state's regulatory or economic markets. *See Mavrix*, 647 F.3d at 1224 (citing *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006)). The standard

for general jurisdiction is an exacting one, "as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Fred Martin Motor*, 374 F.3d at 801.

Plaintiff argues Defendants are subject to general jurisdiction in the forum state on the basis of contacts established through their websites and one disputed instance of physical presence in California. Specifically, Defendants' interactive websites allow California residents to purchase flowers for students to pick up at kiosks at school graduations outside of the California, and are "intentionally marketed in the State of California via association with college and university websites" even though Defendants have set up a "charade"[2] whereby the websites "pretend[] to avoid contacts in the State of California." (Opp'n to MTD 1-3.) Additionally, on one occasion in May 2008, Plaintiff asserts Defendants and/or its employees were present and attempting to sell flowers at the graduation of Concordia University in Fullerton, California, until these efforts were stymied by campus police. (*Id.* at 2.)

These contacts don't even approach the requisite approximation of physical presence in California to confer general jurisdiction in this forum. Even accepting Plaintiff's version of the Concordia incident,[3] Defendants' physical presence in California was a one-time occurrence, not

---

[2] Plaintiff's allegations, raised for the first time in opposition to the instant motion to dismiss, that Defendants' websites are a "charade," or have been "recently tailored," are far from clear. (*See* Opp'n 1-3, 8, 14.) Plaintiff seems to believe Defendants have altered their websites to appear to exclude transactions from residents of California "[u]sing JavaScript and other software features" to program their websites "such that transactions that use the 'CA' state designator in their credit card address [are] greeted with a 'Sorry-We do not accept orders from the public at this time,' or a similar message" when an individual accesses the website directly. (*Id.* at 8.) However, individuals in California—or any state—can also access the websites by means of links established through participating universities, because Defendants "graft a hot-button onto an existing university's or college's active web site as a parasite [to] solicit flowers business state-by-state thereby." (*Id.* at 14.) Although any implications that Defendants have acted to deceive the Court or the general public are too vague to discern at this time, the Court accepts as true for the purposes of this motion that California residents are able to purchase flowers directly from Defendants' websites, at least if they access the websites through a participating school's link. The Court also accepts as undisputed that none of these participating schools are located in California.

[3] As described, *supra* at 3-4, no facts relating to the Concordia incident were alleged in the FAC. However, Plaintiff has presented the Declaration of Robert Hall in support of its opposition to Defendants' motion, which the Court may properly consider as evidence in its determination of jurisdictional issues. *See Doe v. Unocal Corp.*, 248 F.3d at 922. And, although Defendants dispute the Concordia incident, the Court resolves factual disputes in the Plaintiff's favor for the purposes of this motion. *See Mavrix*, 647 F.3d at 1223, *supra* at 4. The Court discusses the disputed Concordia incident and the inferences which may be made at greater length, *infra* at 11-12.

systematic, and did not have continuity or longevity. *See Int'l Shoe*, 326 U.S. at 317 (corporate agent's "conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there."). Indeed, this isolated instance falls far short of even "occasional" sales to forum residents, *see Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1086, 1086 (9th Cir. 2000), or the physical presence of a "substantial sales force," *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir. 1984), both of which have been held insufficient contacts to confer general jurisdiction. *See Mavrix*, 647 F.3d at 1226.

Nor is Defendants' operation of interactive websites sufficient to confer general jurisdiction. As the Ninth Circuit recently clarified, the interactivity of a website, as articulated in the widely-accepted *Zippo*[4] "sliding scale" test, is intended for use only in the context of a specific jurisdiction inquiry. *Mavrix*, 647 F.3d at 1227. "The level of interactivity of a nonresident defendant's website provides limited help in answering the distinct question whether the defendant's forum contacts are sufficiently substantial, continuous, and systematic to justify general jurisdiction." *Id*. (citing *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 712 (8th Cir. 2003) ("Under the *Zippo* test, it is possible for a Web site to be very interactive but to have no quantity of contacts. In other words, the contacts would be continuous, but not *substantial*. This is untenable in a general jurisdiction analysis.")).

Here, Plaintiff has proffered an affidavit from one California resident, attesting that he was able to access the Commencement Flowers website from his home in Fallbrook, California, and placed an order for flowers to be delivered to a student at Johns Hopkins University's commencement in June 2011. (*See* Noyes Decl. ¶ 2-3, Ex. 12 to Opp'n to MTD.) Aside from this one California purchase, Plaintiff has offered no evidence to support a finding that California residents interact with Defendants' websites with any sort of continuity, volume, or economic impact. And Plaintiff does not dispute that "[n]either Defendant is incorporated in California nor registered or licensed to do business here. They pay no taxes in California, maintain no bank accounts in California, and target no print, television, internet or radio advertising toward

---

[4] *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).

California." (Reply ISO MTD 2.) As in *Mavrix*, 647 F.3d at 1225, the Court finds the absence of such contacts significant. Ultimately, the Court agrees with Defendants that the "occasional sales of flowers to California buyers (linked from the website of one of the 200 schools Defendants serve and for delivery in that school's jurisdiction every single time) are not sufficient to create general jurisdiction" without a much greater showing by Plaintiff. (*See* Reply ISO MTD 2-3.) For these reasons, the Court finds Defendants' activities do not approximate physical presence in California, and that Defendants consequently cannot be subject to general jurisdiction in California.

*(ii) Specific Jurisdiction*

Where, as here, general jurisdiction is not proper over Defendants, the Court must ask whether the "nature and quality" of Defendants' contacts are sufficient to justify the exercise of specific jurisdiction in a given case. *Data Disc*, 557 F.2d at 1287. The three-prong test applied by the Ninth Circuit to determine specific jurisdiction over non-resident defendants requires the Court to ask whether (1) Defendants purposefully directed their activities at California or performed some act by which they purposefully availed themselves of the privilege of conducting activities in California; (2) Plaintiff's claims arise out of these forum-related activities; and (3) the exercise of specific jurisdiction over Defendants is reasonable. *See Fred Martin Motor Co.*, 374 F.3d at 802. Plaintiff bears the burden of satisfying both of the first two prongs. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 2001). If Plaintiff succeeds, the burden shifts to Defendants to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Fred Martin Motor*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)). The Court examines these prongs in turn.

(a) First Prong: Purposeful Direction

The first prong of the specific jurisdiction analysis comprises both "purposeful direction" and "purposeful availment." *Mavrix*, 647 F.3d at 1228. In cases alleging tort-like causes of action, such as Plaintiff's trademark infringement, trademark dilution, and unfair competition claims against Defendants in this case, the Ninth Circuit focuses on "purposeful direction," applying the "*Calder* effects" test originated in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). *See*

*Facebook, Inc. v. Pedersen*, 2012 WL 1836257, at *4 (N.D. Cal. May 21, 2012) ("The Court finds that the *Calder* effects test is the proper framework for analyzing the exercise of specific personal jurisdiction over defendants, because [the plaintiff] alleges trademark dilution and infringement, both of which are tort-like causes of action."); *Mavrix*, 647 F.3d at 1228 (applying *Calder* effects test under purposeful direction analysis to claims of copyright infringement). Accordingly, the Court must examine whether Defendants have "(1) committed an intentional act, (2) expressly aimed at that forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food*, 303 F.3d at 1111. All three elements of the test must be satisfied. *Fred Martin Motor*, 374 F.3d at 805.

(1) <u>Intentional Act</u>

In the context of the *Calder* effects test, an intentional act refers to an "actual, physical act in the real world." *Juniper Networks, Inc. v. Juniper Media, LLC*, 2012 WL 160248, at *2 (N.D. Cal. Jan. 17, 2012). A defendant need only have performed an act, any act, and need not have intended "to accomplish a result or consequence of that act." *Fred Martin Motor*, 374 F.3d at 805. Generally, this element is easily met, and it is well-established that the creation and operation of a website suffices. *Id.* (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128-29 (9th Cir. 2010)). The Court concludes, and the parties do not contest, that Defendants have committed an intentional act.

(2) <u>Express Aiming</u>

The express aiming requirement of the *Calder* effects test is met when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Dole Food*, 303 F.3d at 1111. Whether tortious conduct on a nationally accessible website is expressly aimed at a particular forum in which the website may be accessed is an evolving legal question that courts have struggled to answer since the invention of the Internet. *See Mavrix*, 647 F.3d at 1229 (citing cases). Many courts have employed some version of the *Zippo* sliding scale, *supra* at 7 and n.4, to assist in categorizing websites and assessing the type of activity they conduct in the forum. *See, e.g.*, *Mavrix*, 647 F.3d at 1226-27, 29; *Pebble Beach* v. *Caddy*, 453 F.3d 1151, 1156-58 (9th Cir. 2006); *Cybersell, Inc. v. Cybersell,*

*Inc.*, 130 F.3d 414, 418-19 (9th Cir. 1997). At one end of the *Zippo* scale are "passive" websites, on which a defendant simply posts information that individuals in the forum state may access—these do not support personal jurisdiction. *Mavrix*, 647 F.3d at 1226-27. At the other end are "active" websites, through which a defendant engages in business transactions over the Internet, thereby entering into contracts with residents of the forum state "that involve the knowing and repeated transmission of computer files over the Internet," *Zippo*, 952 F.Supp at 1124—conversely, these do support personal jurisdiction. In between these two extremes lie most commercial websites. Precisely where a particular website fits on the continuum depends upon the "level of interactivity and commercial nature of the exchange . . . that occurs on the Web site." *Id.* at 1124.

Adopting *Zippo*'s general framework, the Ninth Circuit has elaborated that a passive website alone, without "something more" to establish conduct directly targeting the form, cannot satisfy the express aiming prong. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019-21 (9th Cir. 2002). Courts may consider a variety of factors in deciding whether a defendant has done "something more," including the interactivity of the website, the geographical breadth of the website's commercial reach, and whether the defendant "individually targeted" individuals in the forum through the website. *See, e.g.*, *Mavrix*, 647 F.3d at 1230 (concluding based on the subject matter of defendant's celebrity-focused website, as well as the size and commercial value of the California market, that defendant "anticipated, desired, and achieved" a substantial California audience, in satisfaction of the "something more" requirement); *Rio Props.*, 284 F.3d 1007, 1020 (9th Cir. 2002) (finding "something more" where defendant ran a for-profit marketing campaign in the forum and purposefully operated a website whose content infringed plaintiff's trademarks); *Pebble Beach*, 453 F.3d at 1158 (concluding that the "foreseeable effect" of harm in California was not sufficient to establish "something more" where defendant operated a non-interactive website and no wrongful conduct could be construed as being directed at or targeting California).

Defendants' websites are certainly interactive. By allowing individuals to purchase flowers for delivery to graduations on their websites, even if only accessible through some redirection through a participating school, Defendants clearly engage in business transactions

1 through the Internet.  However, the scope of their commercial ambition is more limited.  Although
2 they have not precluded individuals in California from purchasing flowers for graduating students
3 at participating schools, none of these 200 or so schools is located in California.  Instead, the
4 schools are on the other side of the continent, in the eastern United States and Canada, with some
5 extending into the Midwest.  (*See* Reply 1.)  That some customers would inevitably reside in
6 California, especially given the large population of the state,[5] may render it foreseeable that harm
7 would occur in California by way of California residents accessing the websites and viewing
8 Defendants' infringing trademarks, but mere foreseeability of harm is not enough to establish
9 personal jurisdiction.  The Supreme Court has long held that "a defendant's awareness that the
10 stream of commerce may or will sweep the product into the forum State does not convert the mere
11 act of placing the product into the stream into an act purposefully directed toward the forum state."
12 *Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of California, Solano County*, 480 U.S. 102, 112 (1987).
13 And where, as here, the product itself (flowers) is never delivered to California, even if the friend
14 or family member who purchased the flowers lives in California, there is even less to indicate
15 purposeful direction.

16 Aside from the Concordia incident, which the Court addresses below, Plaintiff has not
17 pointed to a single commercial action Defendants have directed towards California to indicate
18 Defendants' intent to serve a market in California.  *See Asahi*, 480 U.S. at 112 (listing examples of
19 additional conduct of the defendant that may indicate purposeful direction, such as "designing the
20 product for the market in the forum State, advertising in the forum State, establishing channels for
21 providing regular advice to customers in the forum State, or marketing the product through a
22 distributor who has agreed to serve as the sales agent in the forum State").  Consequently, the
23 Court finds that through their websites, Defendants, who market their product exclusively in
24 //
25

---

26
27
28
[5] Plaintiff argues that the large size of California's population should satisfy the "express aim" element because Defendants consequently enjoy a substantial California customer base.  (Opp'n to MTD 13-14.)  Specifically, Plaintiff states that "approximately 12 percent of the population of U.S. college students reside in the State of California.  On average then, 12% of the population at any of the '200' schools would also be 12%." (*Id.* at 13.)  The Court rejects this argument as statistically and logically flawed, and unpersuasive.

1  relation to schools located outside of California and never deliver the product to California, have
2  not expressly aimed any wrongful conduct toward California citizens.
3    Nor does Plaintiff's vague second-hand account of an incident in California through the
4  Declaration of Mr. Hall suffice to satisfy the express aiming requirement.  Even resolving conflicts
5  in Plaintiff's favor, Plaintiff has not established how Defendants were involved in the incident.
6  Mr. Hall states that on May 15, 2008, he received a telephone call from an employee informing
7  him that "Darryl Firsten's team was present on campus [in California].  They also called
8  themselves Commencement Flowers and they were trying to sell flowers at the University
9  graduation."  (Hall Decl. ¶ 5.)  Mr. Hall apparently "did not recognize the significance of the
10 Concordia incident until [he] discovered online that Darryl Firsten was infringing upon my
11 trademark in November, 2010."  (*Id.* at ¶ 6.)  Mr. Hall does not explain why he did not realize "the
12 significance" of the incident until seeing Defendants' websites, nor does he indicate whether
13 Darryl Firsten himself was present in California, what "Darryl Firsten's team" means, or how the
14 identity of any of these team members was ascertained by Mr. Hall's employee, whose declaration
15 is not supplied.  In response to these vague and conclusory statements, Defendants supply the
16 Declaration of Mr. Firsten, who states unequivocally that neither Defendant corporation "has ever
17 sold flowers in connection with any events at any schools in California," nor have they "ever
18 shipped flowers or other merchandise to California" or "ever intentionally marketed to individuals
19 in California."  (Firsten Decl. ¶ 14, 17, 18.)  The Court need not accept Plaintiff's attenuated and
20 conclusory allegations in the face of specific denials made by Defendants.  *See Terracom v. Valley*
21 *Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995).
22   Moreover, the Concordia incident would also be an insufficient basis to satisfy the second
23 prong of specific jurisdiction, which requires that Plaintiff's claims arise out of Defendants'
24 forum-related activities.  *See Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1988)
25 ("We must determine if the plaintiff . . . would not have been injured 'but for' the
26 defendant['s] . . . conduct directed toward [the plaintiff] in California.").  Plaintiff's claims as
27 stated in the FAC focus entirely on Defendants' websites.  Indeed, no facts pertaining to physical
28 presence in California are even alleged, and the FAC does not assert Defendants serve schools in

1 California through their websites. Accordingly, the Court finds that Plaintiff has not met its
2 burden of showing that Defendants expressly aimed any conduct underlying the claims at
3 California.

4 (3) Harm

5 Finally, Plaintiff has also not established that the third prong of the *Calder* effects test,
6 which asks whether Defendants have caused harm that they know is likely to be suffered in the
7 forum state, is satisfied here. Aside from the vague allegations regarding the Concordia incident—
8 the deficiencies of which have already been noted—Plaintiff has not indicated that Defendants
9 compete in any direct way to sell flowers at any of the same schools or locations as Plaintiff. Even
10 if Defendants knew of Plaintiff's existence and residence in California, it remains unclear whether
11 economic loss to Plaintiff caused by Defendants' sale of flowers in entirely separate markets
12 would constitute foreseeable harm in the forum.

13 (b) Second and Third Prongs: Forum-Related Activities and Reasonableness

14 Because Plaintiff has failed to establish the first prong of the specific jurisdiction inquiry,
15 the Court need not inquire into whether the second or third prongs are met. *See Sher v. Johnson*,
16 911 F.2d at 1361. Accordingly, the Court finds that its exertion of personal jurisdiction over
17 Defendants would exceed the limits of due process.

18 **2. Limited Jurisdictional Discovery**

19 Plaintiff requests the Court grant limited jurisdictional discovery in the event it is inclined
20 to dismiss the case for lack of personal jurisdiction. (Pl.'s Opp'n 14.) The Court has "broad
21 discretion to permit or deny [jurisdictional] discovery." *Calix Networks, Inc. v. Wi-Lan, Inc.*, 2010
22 WL 3515759, at *3 (N.D. Cal. Sept. 8, 2010) (quoting *Laub v. U.S. Dep't of the Interior*, 342 F.3d
23 1080, 1093 (9th Cir. 2003)). The district court should ordinarily grant jurisdictional discovery
24 where "pertinent facts bearing on the question of jurisdiction are controverted or where a more
25 satisfactory showing of the facts is necessary." *Data Disc*, 557 F.2d at 1285 n. 1. However,
26 "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on
27 bare allegations in the face of specific denials made by defendants, the Court need not permit even
28 limited discovery. . . ." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995).

"Although there is no definitive Ninth Circuit authority specifically addressing the level of showing that a plaintiff must make to be entitled to jurisdictional discovery, district courts in this circuit have required a plaintiff to establish a 'colorable basis' for personal jurisdiction before discovery is ordered." *Martinez v. Manheim Cent. Cal.*, 2011 U.S. Dist. LEXIS 41666, at *10 (E.D. Cal. 2011) (quoting *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007)).

As previously discussed, Plaintiff has failed to provide even a colorable basis for personal jurisdiction. Even accepting Plaintiff's vague version of the Concordia incident, the Court cannot conclude Plaintiff has met its burden to demonstrate jurisdiction is proper. Nor has Plaintiff provided any level of detailed indication as to what discovery would establish. In contrast, Defendants' affidavits explicitly and unequivocally deny any physical presence in California. For these reasons, the Court declines to permit jurisdictional discovery as it would appear to be futile in this case.

**3. Motion for Sanctions**

On December 15, 2011, less than a month after bringing its motion to dismiss the FAC and before Plaintiff had filed an opposition to that motion, Defendants brought a motion for sanctions against Plaintiff and Plaintiff's counsel. In it, Defendants seek an order requiring Plaintiff to pay their reasonable attorneys' fees and costs incurred in responding to Plaintiff's FAC. According to Defendants, such an award is merited based on Plaintiff's unreasonable pursuit of frivolous claims in the FAC against Defendants, over whom the Court has no personal jurisdiction, which was intended to harass Defendants, improperly multiply the proceedings, and cause unwarranted expense. (Mot. for Sanctions 1.) Sanctions are further warranted based on Plaintiff's counsel's knowingly false representations to the Court regarding the date of Plaintiff's knowledge of Defendants' use of the mark at issue and the extent of protection Plaintiff's generic mark receives under federal trademark law. (*Id.* at 7-9.)

For this improper conduct, Defendants argue that the award of sanctions is justified under three legal theories. First, under Federal Rule of Civil Procedure 11(c), the Court may impose an appropriate sanction on an attorney who violates the requirements of section (b), which states attorneys must certify, *inter alia*, that all filings are: presented for proper purposes; warranted by

1 existing law or by a nonfrivolous legal argument; and supported by evidence. Fed. R. Civ. P. 11.

2 Second, 28 U.S.C. § 1927 provides: "Any attorney . . . who so multiplies the proceedings in any

3 case unreasonably and vexatiously may be required by the court to satisfy personally the excess

4 costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Third,

5 Defendants argue the Court may award attorneys' fees and costs "under its inherent powers," for

6 the dual purposes of vindicating its judicial authority and making the prevailing party whole for

7 expenses caused by its opponent's obstinancy. (Mot. for Sanctions 5-6) (citing *Primus Auto. Fin.*

8 *Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997); *China Healthways Inst., Inc. v. Hsin Ten*

9 *Enter. USA, Inc.*, 2003 U.S. Dist. LEXIS 16286, at *9-12 (C.D. Cal. 2003)).

10 The Court declines to award sanctions on any of these bases at this time. Although

11 Defendants correctly enumerate the three primary sources of the Court's authority to sanction

12 parties or their lawyers for improper conduct,[6] they fail to convince the Court that any sanctionable

13 conduct has occurred. "[S]anctions should be reserved for the 'rare and exceptional case where

14 the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an

15 improper purpose.'" *Primus Auto.*, 115 F.3d at 649 (quoting *Operating Engineers Pension Trust*

16 *v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988)).

## CONCLUSION

18 For the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss

19 Plaintiff's FAC for lack of personal jurisdiction. The action is again dismissed **WITHOUT**

20 **PREJUDICE**, and the Court will grant Plaintiff a second opportunity to remedy the deficiencies

21 noted above. If Plaintiff wishes, he may file a second amended complaint within fourteen days

---

[6] In *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001), the Ninth Circuit summarized these three authorities succinctly as follows: "(1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power," which is "both broader and narrower than other means of imposing sanctions." The first two authorities only allow sanctions for specific forms of attorney misconduct, *Primus*, 115 F.3d at 648, whereas under a court's inherent power it may sanction a party or counsel for a wide range of conduct, so long as the sanctioned action was made "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Granite Rock Co. v. Teamsters Local 287*, 2012 WL 726645, at *2 (N.D. Cal. Mar. 1, 2012). However, before awarding sanctions under inherent authority, the court must make an explicit finding of bad faith or conduct tantamount to bad faith. *Fink*, 239 F.3d at 994 ("[A]n attorney's reckless misstatements of law and fact, when coupled with an improper purpose . . . are sanctionable under the court's inherent power.").

after this Order is electronically docketed.  Additionally, Defendants' motion for sanctions is **DENIED**.

   **IT IS SO ORDERED**.

DATED: July 27, 2012

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge